IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERT CONVERY, JR.** : | **CIVIL ACTION** |
| : | |
| v. : | NO.  22-2346 |
| : | |
| **TOM MCGINLEY, THE DISTRICT** : | |
| **ATTORNEY OF THE COUNTY OF** : | |
| **BERKS, THE ATTORNEY GENERAL** : | |
| **OF THE STATE OF PENNSYLVANIA** : | |

# MEMORANDUM

**MURPHY, J.**                                                                                    **November 27, 2023**

Robert Convery, Jr. objects to Magistrate Judge Sitarski's recommendation that we deny his petition for writ of habeas corpus.  He argues that Judge Sitarski erred in concluding that Mr. Convery's attorney for his criminal trial provided him effective assistance of counsel.  Based on our thorough review of the record and Judge Sitarski's well-reasoned report — and noting that Mr. Convery's objections misstate the conclusions Judge Sitarski reached — we approve and adopt the report and recommendation, and overrule Mr. Convery's objections.

**I.**   **Background and Procedural History**

We "adopt[] the background and procedural history set forth in the R&R, which . . . has not been challenged in [Mr. Convery's] objections." *Marchesano v. Garmin*, 624 F. Supp. 3d 560, 562 (E.D. Pa. 2022).  Judge Sitarski reproduced the facts from the Pennsylvania Superior Court's decision affirming the denial of Mr. Convery's Post-Conviction Relief Act (PCRA) petition.

> In the fall of 2013, Pi Kappa Phi fraternity brothers, Appellant, Avery Jones, Kyle Balga, and Allen Mummert were living at 1040 Pike Street in the City of Reading, Pennsylvania where they were attending Albright College.  The brothers often hosted Pi Kappa Phi affiliated events and parties.  Appellant's bedroom was located next to the bathroom on the second floor.
>
> On December 6, 2013, the residents of 1040 Pike Street held their annual Christmas date party.  Thomas Mitchell ("Mitchell"), a fraternity brother and

friend of Appellant, attended the party. At the party, Mitchell imbibed beer, liquor, and wine over a five- or six-hour period, before falling asleep on a couch that was located on the main floor of the residence. A photograph posted on Facebook, depicted Mitchell "passed out" on the couch with a beer in his hand and an empty beer can laying on top of him. When Mitchell awoke, he was in Appellant's second-floor bedroom, his pants and shoes were off, and Appellant was performing oral sex on him. Mitchell could not remember how he moved from the couch to Appellant's room or when his pants were removed. Shocked by the assault, Mitchell immediately fled the residence.

The next morning, Appellant initiated a text conversation with Mitchell, wherein he said that "he was really sorry" and that "it wouldn't have happened if he was sober." Mitchell did not know what had happened, so he was "confused" and "angry" with Appellant. However, Mitchell did not save the messages or report the assault out of fear of public humiliation and a desire to forget the incident. Instead, Mitchell forgave Appellant and permitted life to return to normal.

The following school year, Appellant, Avery Jones, Kyle Balga, and Allen Mummert moved to 1610 North 11th Street. Their new residence continued to be the fraternity gathering spot. Mitchell still frequented Appellant's residence. On November 22, 2014, Appellant and his roommates were hosting a party. Mitchell arrived around one or two in the morning after a night of bar hopping. Mitchell was "heavily intoxicated" and fell asleep while talking to people in Appellant's room. Again, Mitchell awoke to find his pants missing and Appellant performing oral sex on him. Mitchell fled to his own residence.

As in the aftermath of the first assault, Appellant apologized for his actions through a text message conversation with Mitchell. Mitchell preserved the messages, wherein Appellant affirmed the existence of a previous assault and asked Mitchell to pretend like "last night didn't happen," blaming his actions on his intoxication level. Mitchell was still "afraid his peers would judge him" and did not report the assault.

Two months later, the fraternity brothers threw another party at their residence. During the party, Appellant's housemate and best-friend, Avery Jones ("Jones"), consumed alcohol for four to six hours, before going to sleep in his own room. In the early morning hours of February 9, 2015, Jones awoke to find his pants removed and Appellant performing oral sex on him. Jones pushed Appellant away, left his room, and proceeded to another housemate's room where he immediately told him what happened. The next day, Appellant texted Jones asking for forgiveness and saying "that he had made a terrible mistake." Over the next several days, Jones decided that he was not going to report the incident and deleted the text messages because he wanted to "wipe himself clean of the situation and having the text messages reminded him of it."

2

Meanwhile, Mitchell learned of the assault of Jones through another fraternity brother, felt guilty that he had not reported Appellant's earlier assaults, and decided to speak with Albright's public safety officer. Mitchell did not tell the officer the full extent of what happened, because he was uncomfortable talking about it, but he did report "enough information so that he knew what happened." Afterwards, Mitchell approached Jones to see if he would also come forward. Jones met with Albright's public safety officer, explaining what happened to him. At the time Jones did not wish to pursue action against Appellant. However, he "changed his mind after he had time to reflect." At Mitchell's request, the matter was referred to the local authorities. Appellant was arrested and charged with three counts of Involuntary Deviate Sexual Intercourse ("IDSI") and three counts of sexual assault.

A jury trial was held on June 14, 2016, at which Appellant took the stand in his own defense. Appellant represented that the first two incidents with Mitchell were consensual and that Mitchell fabricated the sexual assault allegations because he did not want anyone to know about his sexuality. Appellant also testified that he slept in Jones's bedroom the night of the third incident, but that "nothing happened between them." Appellant described his level of inebriation at all three events as intoxicated but functioning. Appellant also testified that his step-sister, Alexandria Veight, was at the house and had knocked on his bedroom door during the second incident. Appellant denied texting Mitchell after the December 2013 incident, but confirmed that he sent text messages after the November 2014 and February 2015 events. Appellant explained that although the November 2014 encounter was consensual, he "took the blame" because he didn't want Mitchell "to be worried about being caught or being called gay." Finally, Appellant agreed that, while no assault happened, he texted with his then-best friend Jones for the last time after the third incident and that Jones had no further contact with him from that day forward. Appellant had no explanation for why his best friend suddenly cut off all contact with Appellant. The jury disbelieved Appellant's version of events, convicting him of all charges.

Following its assessment, the Pennsylvania Sexual Offender Assessment Board ("SOAB") recommended that Appellant be classified as a sexually violent predator ("SVP"). However, the trial court rejected the SOAB's determination and concluded that Appellant did not meet the criteria of SVP classification. [On] the IDSI counts, the trial court imposed three consecutive sentences of four and one-half to ten years imprisonment. The sexual assault convictions merged with the IDSI counts. Appellant received an aggregate sentence of thirteen and one-half to thirty years imprisonment. Appellant filed a post-sentence motion which was denied. A timely direct appeal followed in which Appellant challenged the discretionary aspects of his sentence. On February 15, 2018, we affirmed Appellant's judgment of sentence. *See Commonwealth v. Convery*, 185 A.3d 1122 (Pa. Super. Ct 2018) (unpublished memorandum). On August 1, 2018, the Supreme Court denied Appellant's petition for allowance of appeal. *See*

3

> *Commonwealth v. Convery*, 190 A.3d 1126 (Pa. 2018).
>
> Appellant filed a timely, counseled PCRA petition, asserting many allegations of ineffective assistance of trial counsel [Nino Tinari, Esquire], an accusation of witness tampering by trial counsel, and an assertion that he had uncovered text messages between himself and Mitchell that were sent after the first incident. On August 21, 2019, the PCRA court held an evidentiary hearing, at which Appellant, Katelyn Johnson, who posted the photograph of Mitchell on Facebook, Alexandra Veight, trial counsel, and Robert Convery, Sr. testified. At the completion of the hearing, the PCRA court ordered that the notes of testimony be transcribed and that post-hearing briefs be submitted. Both the Commonwealth and Appellant filed briefs in support of their positions. On June 17, 2020, the PCRA court issued an order and opinion denying the petition. This appeal followed.

DI 15 at 4 (cleaned up) (quoting *Commonwealth v. Convery*, 2021 WL 3613633 (Pa. Super. Ct. Aug. 16, 2021)).

The Pennsylvania Superior Court affirmed the denial of Mr. Convery's PCRA petition. Regarding Ms. Johnson's lack of testimony, the superior court said that the record supported the conclusion that her failure to testify did not prejudice Mr. Convery. *Id.* at 8 (quoting *Convery*, 2021 WL 3613633, at *9-11). Regarding Ms. Veight's lack of testimony, the superior court said the same: Mr. Convery suffered no prejudice from the decision not to call Ms. Veight as a witness. *Id.* at 16 (quoting *Convery*, 2021 WL 3613633, at *8-9).

Mr. Convery brought his petition to federal court with essentially the same arguments: his trial counsel's failure to call Ms. Johnson or Ms. Veight as witnesses prejudiced him. *See* DI 7 at 5, 8. For Ms. Johnson, Mr. Convery challenges the state courts' factual determination that the lack of additional details that were included in Ms. Johnson's PCRA testimony did not prejudice him. *See* DI 15 at 9-10. For Ms. Veight, Mr. Convery argues that "the [s]uperior [c]ourt's conclusion that he suffered no prejudice from the failure to present Veight's full testimony was based upon a misunderstanding" of the benefits of her story. *Id.* at 16.

4

Before Judge Savage transferred this case to us, he referred Mr. Convery's petition to Judge Sitarski for a report and recommendations. *See* DI 4. Judge Sitarski rejected each of Mr. Convery's contentions. First, Judge Sitarski said that the underlying state courts did not make an unreasonable determination of the facts regarding the value of Ms. Johnson's testimony at trial (and trial counsel's decision to not call her as a witness). *See* DI 15 at 14. It was not unreasonable, according to Judge Sitarski, for the state courts to conclude that Ms. Johnson's testimony would "materially contradict[]" Mr. Convery's, and that choosing not to call Ms. Johnson as a witness did not prejudice Mr. Convery. *Id.* at 13.

Second, Judge Sitarski stated that the state courts did not make an unreasonable determination of the facts in holding that Mr. Convery was not prejudiced by the decision to refrain from calling Ms. Veight as a trial witness. *See id.* at 20-21. Judge Sitarski explained that the Superior Court's rationale — specifically, that Ms. Veight's trial testimony "already subsumed" the "specifics" of Ms. Veight's testimony at the PCRA hearing — was not unreasonable. *Id.* at 20.[1]

Mr. Convery has objected to Judge Sitarski's report. *See generally* DI 18.[2] He argues that Judge Sitarski incorrectly concluded that trial counsel provided effective assistance of counsel by deciding not to call Ms. Johnson or Ms. Veight as trial witnesses, and by failing to rehabilitate Ms. Veight's credibility after the prosecution's questioning. *Id.* at 3. Mr. Convery insists that Judge Sitarski "underestimate[d]" the value of both individuals' exculpatory

---

[1] Judge Sitarski also recommended that we dismiss Mr. Convery's argument regarding the purported "cumulative error[s]" made by trial counsel. *See id.* at 21 n.4. She finished by recommending that we not issue Mr. Convery a certificate of appealability. *See id.* at 22.

[2] Citations to Mr. Convery's objections use the pagination of the CM/ECF docketing system.

testimony in crafting her recommendations. *Id.* at 5. The report, in Mr. Convery's view, flouts the Supreme Court's guidance for ineffective assistance of counsel claims set forth in *Strickland v. Washington*. *See id.* at 12-13 (citing 466 U.S. 668 (1994)).[3]

We ordered the Berks County District Attorney's Office ("the DA's office") to respond to Mr. Convery's objections, *see* DI 19, and it disagrees with his position, *see generally* DI 20; *see also* E.D. Pa. L.R. 72.1(IV)(b) ("Any party *may* respond to another party's objections within fourteen (14) days after being served with a copy thereof." (emphasis added)). Relying on *Strickland*, the DA's office argues that Mr. Convery's argument regarding Ms. Johnson's testimony asks us to "review her testimony in a vacuum . . . but fails to appreciate how her testimony fits with the entirety of the evidence presented at trial." DI 20 at 11. Similarly, the DA's office argues that the state courts did not make an unreasonable determination that trial counsel's decision to not call Ms. Veight did not prejudice Mr. Convery. *See id.* at 12-15.

We have subject-matter jurisdiction over Mr. Convery's request for habeas relief. *See* 28 U.S.C. § 2254. For the reasons explained below, we overrule Mr. Convery's objections and adopt Judge Sitarski's report and recommendations.

**II.     Standard of Review**

Congress permits district judges to "designate a magistrate judge . . . to submit . . . proposed findings of fact and recommendations for the disposition . . . of applications for posttrial relief made by individuals convicted of criminal offenses." 28 U.S.C. § 636(b)(1)(B). Parties can object to a magistrate judge's report. *Id.* § 636(b)(1)(C); *see* E.D.

---

[3] Mr. Convery also objects to Judge Sitarski's conclusion regarding his assertion of cumulative error, as well as Judge Sitarski's recommendation that we not issue him a certificate of appealability. *See* DI 18 at 13-14.

Pa. R. 72.1(IV)(b).  They "must specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections." E.D. Pa. R. 72.1(IV)(b).  And we "may accept, reject, or modify, in whole or in part, the findings or recommendations made." § 636(b)(1)(C); *see* E.D. Pa. R. 72.1(IV)(b).  Our review of a magistrate judge's report and recommendations is de novo.  § 636(b)(1)(C).

Our standard of review is further controlled by the Antiterrorism and Effective Death Penalty Act (AEDPA).  *See* 28 U.S.C. § 2254(d).  We must not grant "[a]n application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a [s]tate court . . . unless adjudication of the claim":

> (1) resulted in a decision that was contrary to, or involved unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on *an unreasonable determination of the facts* in light of the evidence presented in the [s]tate court proceeding.

*Id.* (emphasis added).

### III.    Analysis

To start, we reemphasize Judge Sitarski's conclusions: that the state courts' decisions regarding trial counsel's choice to not call Ms. Johnson and Ms. Veight to testify — or attempt to rehabilitate Ms. Veight's credibility on the stand after the prosecution called her as a rebuttal witness — "was not the product of 'an unreasonable determination of the facts.'" DI 15 at 14 (quoting § 2254(d)(2)).  We must review those conclusions de novo, even though Mr. Convery inaccurately restates them in his objections.  Mr. Convery's objections state that Judge Sitarski concluded that he received effective assistance of counsel, that Judge Sitarski "underestimate[d] the value" of the witnesses' potential testimony in her analysis, and that the decisions of trial

counsel prejudiced[4] him.  *See* DI 18 at 3, 5.

      The difference matters.  We afford great deference to state courts' findings when reviewing habeas petitions alleging ineffective assistance of counsel.  The Supreme Court has "noted that even if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's . . . determination.'"  *Wood v. Allen*, 558 U.S. 290, 301 (2010) (alteration in original) (quoting *Rice v. Collins*, 546 U.S. 333, 341-42 (2006)); *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

      We "can disagree with a state court's credibility determination and, when guided by the AEDPA, conclude the decision was unreasonable or that the factual premise was incorrect *by clear and convincing evidence*."  *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (emphasis added).  And "[w]hether the state court reasonably determined that there was a strategic decision under § 2254(d)(2) is a different question from whether the strategic decision itself was a

---

[4] The prejudice standard comes from the Supreme Court's two-part test for ineffective assistance of counsel in *Strickland*.

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  **Second**, the defendant must show that the deficient performance ***prejudiced*** the defense.

*Strickland*, 466 U.S. at 687 (emphasis added).

reasonable exercise of professional judgment under *Strickland* or whether the application of *Strickland* was reasonable under § 2254(d)(1)." *Wood*, 558 U.S. at 304.[5]

Here, the question we must review is *not* whether Mr. Convery had effective assistance of counsel. Rather, it is whether the state courts unreasonably determined the factual findings supporting their conclusion that Mr. Convery was not prejudiced by trial counsel's decision not to call Ms. Johnson or Ms. Veight as witnesses. On that question, we side with Judge Sitarski and hold that the state courts' findings of fact were not objectively unreasonable.

"[A] state court decision is based on an 'unreasonable determination of the facts' if the state court's factual findings are 'objectively unreasonable in light of the evidence presented in the state-court proceeding, which requires review of whether there was sufficient evidence to support the state court's factual findings." *Dennis v. Sec'y, Pa. Dep't of Corr.*, 834 F.3d 263, 281 (3d Cir. 2016) (quoting *Miller-El v. Cockrell*, 537 U.S. at 340). We must "presume that the factual findings of state trial and appellate courts are correct," and "[a] petitioner may only overcome this presumption on the basis of clear and convincing evidence to the contrary." *Arnold v. Superintendent SCI Frackville*, 322 F. Supp. 3d 621, 630 (E.D. Pa. 2018). "[A] state-

---

[5] To the extent Mr. Convery tries to argue in his objections that Judge Sitarski and the state courts unreasonably applied or made a decision "contrary to" *Strickland*, the argument fails. *Cf.* DI 18 at 12-13 (asserting state courts' review "is contrary to the law" and prior courts "ignore[d] the dictates of *Strickland*"). Judge Sitarski's report did not apply *Strickland* directly to Mr. Convery's claims. Rather, she constricted her review — as is required by Congress under § 2254(d) — to what Mr. Convery's challenged in his federal habeas petition: whether the state courts reached their decisions regarding prejudice based on unreasonable determinations of fact. *See* DI 7 at 6 ("[Mr.] Convery argues herein that the state court decision was based on an unreasonable determination of the facts."), 8 ("the Superior Court ignored two vital points, resulting in an unreasonable determination of the facts"), 11 ("Clearly, the state court's decision was based on an unreasonable determination of the facts."). And our de novo review is limited to the findings in Judge Sitarski's report.

9

court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood*, 558 U.S. at 301. "A clear example of an unreasonable factual determination occurs where the state court erroneously finds a fact that lacks any support in the record." *Dennis v. McGinley*, 2021 WL 11505999, at *3 (E.D. Pa. May 7, 2021) (citing *Wiggins v. Smith*, 539 U.S. 510, 528 (2003)).

Like Judge Sitarski, we attempt to organize the facts that Mr. Convery challenged by person. We start with Ms. Johnson. The three main factual determinations that Mr. Convery took issue with are:

- that "'the value' of Johnson's testimony [was] only her having seen Mr. Mitchell walk up the stairs on his own and that he seemed fine";

- that Ms. Johnson's testimony would have contradicted Mr. Convery's; and

- the failure to consider that Mr. Convery would not have testified if Ms. Johnson took the stand.

*See* DI 15 at 11-14.

We do not see clear and convincing evidence that discounts the state courts' findings. Taking each in turn, it was not objectively unreasonable for the superior court to characterize the utility of Ms. Johnson's potential testimony as establishing that "Mitchell seemed 'fine' and [Ms. Johnson] observed him walk upstairs unassisted." *Convery*, 2021 WL 3613633, at *11. The absence of specific language that Mr. Mitchell was "awake and alert" does not amount to an unreasonable determination of fact when, as Judge Sitarski points out, the superior court's characterization of Ms. Johnson's PCRA testimony reflects the same concept. DI 15 at 12 (explaining that stating Mr. Mitchell was awake and alert "is certainly consistent with" stating he was fine).

Not to mention that, as the superior court noted, Ms. Johnson's PCRA testimony about Mr. Mitchell's condition "cannot be divorced from the rest of her testimony," which contradicted Mr. Convery's. *Convery*, 2021 WL 3613633, at *11. Judge Sitarski walked through the many critical contradictions in her report. *See* DI 15 at 12-13. It was not unreasonable for the state courts to find that Ms. Johnson's testimony differed from Mr. Convery's in key respects — a fact that undoubtedly works against Mr. Convery's ability to demonstrate prejudice.

Finally, Judge Sitarski correctly observes that Mr. Convery shows no evidence that his trial counsel would not have called him to testify had it become aware of Ms. Johnson's recollection of the events in question. *See id.* at 14. Without evidence — for example, testimony from Mr. Convery's trial counsel at the PCRA evidentiary hearing stating that his strategy would have changed if he had knowledge of Ms. Johnson's version of events — we cannot say that the state courts made an unreasonable determination by failing to consider the argument in its decision.

Next, Ms. Veight. The factual determination that Mr. Convery challenges is the state courts' apparent "misunderstanding" of the utility of her expansive PCRA testimony, and incorrect conclusion that the absence of her testimony at trial did not result in prejudice. DI 15 at 18-21; *see also Convery*, 2021 WL 3613633, at *9. Mr. Convery lacks clear and convincing evidence demonstrating that the state courts' decisions regarding the utility of Ms. Veight's testimony was objectively unreasonable. As Judge Sitarski explained, it was not objectively unreasonable based on the evidence presented for the state courts to conclude that Ms. Veight's trial testimony — i.e., Mr. Mitchell was alert and awake, and laid on Mr. Convery's bed with his pants down — adequately encapsulated the key points of her prolonged PCRA testimony. DI 15

11

at 20.

Further, Mr. Convery's argument that Ms. Veight's expansive PCRA testimony "directly contradicted Mr. Mitchell's account in vital ways" does not support a finding of objective unreasonableness because Ms. Veight's shorter trial testimony already did that. *See* DI 18 at 11; DI 15 at 20. Judge Sitarski cited to trial testimony from Mr. Mitchell that is much different than what Ms. Veight testified to at trial — that Mr. Mitchell was alert and awake at the time of the second incident. *Cf.* DI 15 at 20 (referencing Mr. Mitchell's trial testimony that he "fell asleep and/or 'passed out' in [Mr. Convery's] bedroom . . . awoke with his pants off and [Mr. Convery] fellating him"). Therefore, the state courts did not make an unreasonable determination of fact with respect to Ms. Veight's testimony.[6]

Finally, we disagree with Mr. Convery's cumulative error argument[7] because the state courts' determinations of fact were not unreasonable, thus, there are no errors to aggregate. "The cumulative error doctrine allows a petitioner to present a standalone claim asserting the cumulative effect of errors at trial that so undermined the verdict as to constitute a denial of his constitutional right to due process." *Collins v. Sec'y of Pa. Dep't of Corr.*, 742 F.3d 528, 542 (3d Cir. 2014). In his petition, Mr. Convery argued that "the cumulative prejudice is the loss of two witnesses attesting to the fact that [Mr.] Mitchell was conscious." DI 7 at 13.

---

[6] Mr. Convery does not appear to object to Judge Sitarski's conclusion that he lacks "clear and convincing evidence that [Ms.] Veight was 'attacked'" by the prosecution "or that her further testimony would have led to a different result if offered in rebuttal of this supposed attack." DI 15 at 20 n.3. In any event, we agree with Judge Sitarski that the superior court's omission of "attacks" from its opinion does not make its finding of a lack of prejudice objectively unreasonable.

[7] As Judge Sitarski points out, Mr. Convery's petition does not assert a cumulative error argument as a standalone claim. *See* DI 15 at 21 n.4.

Notwithstanding the fact that one of the witnesses in question testified at trial that Mr. Convery was "awake and alert," DI 15 at 4 n.21, Mr. Convery falls short of establishing "actual prejudice" because the state courts' finding of no prejudice was not based on unreasonable determinations of fact, *Albrecht v. Horn*, 485 F.3d 103, 139 (3d Cir. 2007).

IV.    **Conclusion**

For the reasons explained above, we adopt Judge Sitarski's report and recommendation, overrule Mr. Convery's objections, dismiss his petition for writ of habeas corpus, and will not issue him a certificate of appealability.[8]

---

[8] Judge Sitarski recommended without explanation that we should not issue a certificate of appealability to Mr. Convery. *See* DI 15 at 22. "Under AEDPA, a [certificate of appealability] may issue 'only if the applicant has made a substantial showing of the denial of a constitutional right.'" *Becker v. Sec'y Pa. Dep't of Corr.*, 28 F.4th 459, 460 (3d Cir. 2022) (quoting 28 U.S.C. § 2253(c)(2)). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *see also id.* at 342 ("The question is the debatability of the underlying constitutional claim, not the resolution of that debate."). Mr. Convery fails to substantiate his argument favoring issuance of a certificate with anything other than the arguments we (and Judge Sitarski) reject under § 2254(d)'s deferential standard. Because Mr. Convery fails to demonstrate that a reasonable jurist could disagree with Judge Sitarski's (and our) conclusions, we decline to issue a certificate of appealability.